IRWIN *et al.* *v.* WEST *et al.*

(*Circuit Court, N. D. Illinois.* January 4, 1892.)

1. FORECLOSURE—EVIDENCE—SUBSTITUTION OF SECURITIES.
   In a suit to foreclose a trust deed it appeared that the defendant had afterwards given the complainant another note, with other security, for the same debt. Defendant and his clerk both testified that this other security was taken in place of the trust deed, but defendant contradicted himself, and the clerk showed that he, was under defendant's influence. The receipt taken by defendant to show what the second note was security for did not state that it was to take the place of the trust deed. *Held*, that the preponderance of the evidence did not show that the second note, with its security, was taken in substitution of the trust deed.

2. SAME—PLEDGE.
   Where the only proof that a note secured by trust deed was pledged to secure a liability in no way connected with the origin of the trust deed is the testimony of the person to whom such liability was incurred, and he is contradicted by the maker of the note, the evidence fails to show that the note was so pledged.

In Equity.

 *Runnels & Burry,* for complainants.

 *Weigley, Bulkley & Gray, C. H. Remy, Flower, Smith & Musgrave; C. H. Leaming, Holden & Farson, Campbell & Custer, Dupee, Judah & Willard, W. G. & A. T. Ewing, G. Frank White, Wilbor & Clarke, John S. Cooper,* and *Gardiner, McFadden & Gardiner,* for defendants.

BLODGETT, District Judge. This is a bill in equity to foreclose a trust deed, given by the defendants West and wife, June 26, 1889, and recorded July 19, 1889, to W. T. Rankin, to secure the note of West to the complainants for $64,000. The proof shows that the note secured by this trust deed was in fact given to indemnify the complainants Irwin and Rand in that amount against certain liabilities they had incurred as sureties for West; and the master has found and reported as a part of the case that complainants have paid the sum of $33,000 principal, as sureties for West, which this note and trust deed were intended to indemnify them against, and, if the trust deed is still in force, it stands as security to complainants for that amount with interest and costs. The master, however, finds and reports that, by an agreement made between complainants and West, subsequent to the giving of the note and trust deed in question, and on the 22d day of July, 1889, West gave complainants an assignment of his equity in 5,001 shares of the capital stock of the Chicago Times Company, to secure his note for $64,000, in substitution for and in place of the note described in this bill and trust deed, and that complainants, by reason of such substitution of security, have no right to the foreclosure of this Rankin trust deed. Complainants have filed exceptions to the findings of the master in this regard. It also appears from the master's report that the property covered by the trust deed was, at the time of the giving of the said trust deed, subject to two prior mortgages for purchase money, both of which are now held by the defendant George F. Bogue, on which there is found to be due the sum of $23,966.83, and no exceptions are filed by any one to this finding. The master also reports and finds that on the 29th day of April, 1889, West and wife gave to one Frederick P. Reed a trust deed, to secure the notes of West for the sum of $30,000, which trust deed was not filed for record until the 24th day of June, 1889, and that this last-mentioned trust deed stands as security for the sum of $13,758.54, due from J. J. West to the First National Bank of Chicago, and $14,595.60, due from J. J. West to Frank S. Weigley, for money paid by him to the Commercial National Bank of Chicago, as surety upon notes of West, and that this last trust deed is a lien on the property in question immediately after the Bogue mortgages. Defendants Winfield S. Shepard and J. J. West and the complainants in the original bill have excepted to the finding of the master in regard to the amount as to which the Reed trust deed stands as security to Weigley. The case therefore stands: (1) On exceptions of complainants Irwin and Rand to the finding of the master that the note of June 26th, for $64,000, and the trust deed to Rankin to secure the same, were to be canceled and given up, by reason of the substitution therefor of the note for $64,000 of July 22, 1889, secured by pledge of the 5,001 shares of Chicago Times Company stock. (2) On exceptions of West and Shepard and Irwin and Rand to the findings of the master that the Reed trust deed stands as security to Weigley for the $13,000 note and accrued interest, paid by Weigley to the Commercial National Bank, as surety for West.

As to the master's finding that a preponderance of proof shows that the note and trust deed for $64,000 set out in the bill was satisfied by the note for the same amount, secured by the Chicago Times Company stock as collateral, I feel, after a careful reading of the proof, compelled to differ in my conclusions from those of the master. The burden of proof to show the substitution of this latter security for the note and trust deed set out in the complainants' bill is upon the defendant West, who sets up this defense. No release or agreement in writing is produced, and it is not pretended that any was ever given to West, or any other person, evidencing such an agreement to substitute securities. West and Graham testify to a parol agreement that the last paper should be in substitution for the former note and trust deed, and upon the testimony of these two witnesses in regard to this substitution the master finds there is a preponderance of proof in favor of this line of defense. West has so far contradicted himself in the various answers and positions he has taken in regard to this transaction as to fully justify the court in disregarding his testimony, and holding it for naught as bearing upon the question at issue. Graham was West's clerk. His testimony justifies the conclusion that he was largely under the influence of West, and was a willing witness in his behalf; and his testimony, when you read the examination and cross-examination, bears quite satisfactory evidence of his having been schooled in regard to what he should testify to. One of the most pregnant items of evidence upon this branch of the case is the fact that, while West was careful to take from Irwin a receipt showing exactly what this note secured by Times stock was to stand as security for, he should have wholly failed to put into the same document a clause to the effect that it was to take the place of the security given on the 26th of June. This receipt, fully and carefully as it is prepared and executed, must be held to represent the entire contract made between the parties at the time this collateral note was given, and excludes, of itself, the idea that it was to effect any other matter than what is set out in the receipt. The proof shows that Irwin and Rand learned about the 7th of July that the $30,000 Reed trust deed had been given by West before he gave his trust deed to Rankin for them, and they wrote at once to West, reproaching him for his duplicity in assuring them that the Bogue incumbrance was the only incumbrance on the premises prior to the one he had given Rankin for them. In answer to this letter West wrote a long one to Irwin, explaining the emergency in which he was placed, and attempted to explain to him how the giving of the Reed trust deed was no breach of faith towards Irwin and Rand; and he further explained that he had given to H. C. Huiskamp a note for $64,000, payable to Irwin and Rand, and secured the same by a pledge of his equity in this same block of 5,001 shares of Times stock, with directions to Huiskamp to deliver the note to the complainants, and in this letter he does not say a word about this being in substitution for or to take the place of the Rankin trust deed; on the contrary, speaks about its being proper that he should have a receipt stating what the trust deed is given for; evidently, I think,

alluding to the Rankin trust deed now in suit. The transaction between Irwin and West, by which the note and Times collateral was made on the 22d of July, is but a consummation of what West had said in his letter of the 7th of July he was willing to do in the way of security, to make the complainants good for the Reed mortgage having been placed ahead of theirs upon the record. Much weight is attached to the expression in Irwin's letter to West, after he had discovered that the Reed trust deed had been put on record, to the effect that his lien upon West's real estate was worthless; but this expression cannot be tortured into evidence that he released, or intended to release, whatever of value this trust deed was to himself and Reed. Its value was undoubtedly greatly impaired by the fact which he had just learned that the Reed trust deed was a prior lien to the one now in suit; and this hasty expression, used in a letter written on the discovery of the Reed mortgage, is, to my mind, of no weight in support of the alleged argument of July 22d. I might spend much more time in analyzing this testimony, but suffice it to say that I think all the proof in the case, when taken together, fails to sustain the theory now advanced by West,—that the note and trust deed in question were to be canceled by reason of the note and collateral pledged on the 22d of July.

As to the exceptions taken by the several complainants and cross complainants in regard to the finding of the master that the Reed trust deed is to stand as security to Weigley for the amount Weigley had paid as surety for West to the Commercial National Bank, I think it is sufficient to say that the only evidence we have of any pledge of the $30,000 to secure this is from Weigley himself. This is denied by West; and, as this security had nothing to do with the origin of the trust deed, it seems to me that it ought to take more conclusive and positive testimony to import this Commercial National Bank debt into the Reed trust deed. The exceptions of the complainant to the report of the master are therefore sustained, and also the exceptions of West and Shepard to that part of the master's report in which he gives Weigley the benefit of the $30,000 trust deed to secure him against liability to the Commercial National Bank. A decree may be prepared sustaining the exceptions as above, and directing a sale of the premises covered by the trust deed, and that out of the proceeds the incumbrances be paid in the order of priority found by the master.